**Appendix of Unpublished Cases**

Westlaw.

--- F.R.D. ----                    FOR EDUCATIONAL USE ONLY                    Page 1
--- F.R.D. ----, 2007 WL 2460613 (W.D.N.Y.)
**(Cite as: --- F.R.D. ----)**

Brickey v. Dolencorp, Inc.
W.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,W.D. New York.
Tammy BRICKEY. et al., Plaintiffs,
v.
DOLENCORP, INC., et al., Defendants.
**No. 06-CV-6084L.**

Aug. 29, 2007.

**Background:** Former employees brought nationwide collective action and class action against employer under the Fair Labor Standards Act (FLSA) seeking to recover unpaid overtime. Four plaintiffs also asserted violations of the wage and hour laws of their respective states. Defendants moved to dismiss state law class claims.

**Holdings:** The District Court, Larimer, J., held that:

(1) plaintiffs demonstrated a common nucleus of fact so as to justify exercise of supplemental jurisdiction over state claims of class members, and

(2) exercise of supplemental jurisdiction over state law claims was appropriate.

Motion denied.

**[1] Labor and Employment 231H ⊙0**

231H Labor and Employment
Former employees who brought class action suit against employer under the Fair Labor Standards Act (FLSA) seeking to recover unpaid overtime demonstrated a common nucleus of fact so as to justify actions of supplemental jurisdiction over state claims of class members, where plaintiffs alleged a specific corporate policy to reduce costs of employee compensation, and that all putative class members were under-compensated pursuant to the same scheme. 28 U.S.C.A. § 1367; Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. §

201 et seq.

**[2] Federal Courts 170B ⊙0**

170B Federal Courts
In determining whether it is appropriate to decline jurisdiction, the court will also consider whether judicial economy, convenience and fairness to litigants favor hearing the state and federal claims together. 28 U.S.C.A. § 1367.

**[3] Labor and Employment 231H ⊙0**

231H Labor and Employment
Exercise of supplemental jurisdiction over state law claims in class action suit brought under the FLSA was appropriate, where complaint invoked laws of four states, all of which are largely parallel to the FLSA, and thus state claims did not threaten predominance of FLSA claims; moreover, interests of judicial economy, convenience and fairness to parties favored hearing the FLSA and state law claims together. 28 U.S.C.A. § 1367; Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.

Charles E. Joseph, Joseph and Herzfeld, LLP, New York, NY, Eric Kingsley, Kingsley & Kingsley, APC, Gregory N. Karasik, Spiro Moss Barness Harrison & Barge LLP, Ira Spiro, Los Angeles, CA, for Plaintiffs.
David A. Copus, Dominick C. Capozzola, Mark Diana, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Morristown, NJ, Joel S. Allen, Paul B. McKeeby, Ronald E. Manthey, Baker & McKenzie LLP, Dallas, TX, Kathleen M. Sellers, Hodgson Russ LLP, Buffalo, NY, for Defendants.

DECISION AND ORDER
LARIMER, District J.
**\*1** Plaintiffs, former employees of defendants, seek to bring a nationwide collective action under the FLSA, as well as a class action pursuant to Fed. R. Civ. Proc. 23, to recover for unpaid overtime. It is alleged that the proposed class may embrace employees of defendants in as many as thirty-four

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----                                    FOR EDUCATIONAL USE ONLY                                    Page 2
--- F.R.D. ----, 2007 WL 2460613 (W.D.N.Y.)
**(Cite as: --- F.R.D. ----)**

(34) different states.

Relying on 28 U.S.C. § 1367, which grants this Court supplemental jurisdiction over state law claims arising out of the "same case or controversy" as plaintiffs' federal claims, four of the plaintiffs also assert violations of the wage and hour laws of their respective states. Pursuant to Fed. R. Civ. Proc., plaintiffs purport to assert their state law claims on behalf of themselves and all similarly situated employees.

Defendants have moved to dismiss plaintiffs' Rule 23 state law class claims pursuant to Fed. R. Civ. Proc. 12(c), on the grounds that the Court cannot, or should not, exercise supplemental jurisdiction over absent Rule 23 class members.

Primarily, defendants argue that this Court lacks supplemental jurisdiction in the first instance, because the plaintiffs have failed to demonstrate, as required by 28 U.S.C. § 1367(a), that their state law claims and FLSA claims are "part of the same case or controversy under Article III of the United States Constitution." Specifically, defendants urge that plaintiffs have failed to identify or demonstrate a "common nucleus of fact," such as a specific corporate policy uniformly applied to all putative plaintiffs.

In the alternative, defendants argue that even if the Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to Fed. R. Civ. Proc. 23, the Court should decline to exercise that jurisdiction. Defendants point out that plaintiffs' state law class claims involve the laws of four different states, and that the ultimate number of state laws presented may rise precipitously as the case proceeds, since other employees who opt into the FLSA collective action from the other thirty states in which defendants maintain stores could assert their own state law claims under the same supplemental jurisdiction invoked by the four named plaintiffs. Defendants also argue that exercising supplemental jurisdiction would allow plaintiffs to circumvent the FLSA's Congressionally mandated procedures, taking advantage of the

earlier tolling of claims and opt-out procedures of Rule 23 instead of the FLSA's more stringent standards, and would prove unduly complicated and confusing.

I find defendants' arguments to be unavailing. "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6). Under that test, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994), *citing Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987). The Court notes that the traditional Rule 12(b)(6) test, which permitted dismissal only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," has recently been changed by the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (May 21, 2007), which conclusively retired the "no set of facts" test and held that "a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.,* 127 S.Ct. at 1964-65 (citations omitted). *See e.g., Ashcroft v. Dept. of Corrections,* 2007 U.S. Dist. LEXIS 49079 (W.D.N.Y.2007) (discussing and applying the *Bell Atlantic Corp.* standard).

**\*2** [1] Plaintiffs' Amended Complaint (Dkt.# 8) alleges that defendants pressured store managers to reduce the costs of employee compensation and rewarded managers for staying within budgeted and scheduled labor hours, and that store managers, with the knowledge and consent of corporate management, responded by violating the FLSA and state laws. Specifically, plaintiffs allege that store managers: (1) routinely required hourly employees to work "off the clock" performing tasks such as paperwork and bank deposits, without compensation or with improperly calculated compensation, sometimes promising to credit or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----                    FOR EDUCATIONAL USE ONLY                    Page 3
--- F.R.D. ----, 2007 WL 2460613 (W.D.N.Y.)
(Cite as: --- F.R.D. ----)

carry over those hours but failing to do so; (2) failed to pay earned compensation, (3) failed to pay employees at the proper rate for overtime hours, and failed to maintain accurate time and pay records. Plaintiffs further allege that all of the putative class members, employees of defendants, were under-compensated pursuant to the same scheme.

Accepting plaintiffs' allegations as true and drawing all reasonable inferences in plaintiffs' favor, these allegations identify and describe a common nucleus of fact which goes well beyond a "formulaic recitation" of the elements of plaintiffs' FLSA and state law claims, and are sufficiently specific to "raise a right to relief above the speculative level." *Bell Atlantic Corp.,* --- U.S.at ---- - ----, 127 S.Ct.at 1964-65. Nothwithstanding defendants' arguments to the contrary, there is simply no basis for the Court to require that plaintiffs responding to a Rule 12(c) motion, without the benefit of discovery, concretely prove all of the specifics relating to the policies and practices they have alleged.

I further find that there is no basis, at this juncture, to decline to exercise supplemental jurisdiction over the plaintiffs' state law claims. 28 U.S.C. § 1367(c) provides that a court may decline to exercise supplemental jurisdiction, "if ... the [state] claim substantially predominates over the [federal] claim or claims over which the district court has original jurisdiction [or] in exceptional circumstances, there are other compelling reasons for declining jurisdiction."28 U.S.C. § 1367(c)(1), (4).

[2][3] In determining whether it is appropriate to decline jurisdiction, the court will also "consider whether, *inter alia*, judicial economy, convenience and fairness to litigants' favor hearing the state and federal claims together." *Glewwe v. Eastman Kodak Company,* 2006 U.S. Dist. LXIS 33449 at *13 (W.D.N.Y.2006), *quoting United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Here, the Amended Complaint invokes the laws of four states, all of which are

largely parallel to the FLSA. As such, the state claims do not, at present, appear to threaten predomination over the plaintiffs' FLSA claims, and the interests of judicial economy, convenience and fairness to the parties favor hearing the plaintiffs' FLSA and state law claims together. Plaintiffs have, however, admitted that they may later seek to amend the complaint to assert claims by plaintiffs from other states. In the event such leave is hereafter sought, the Court may revisit the question of whether predominance issues or concerns of judicial economy have rendered the continued exercise of supplemental jurisdiction inappropriate.

*3 Nor do the discrepancies between the Rule 23 and FLSA opt in/opt-out procedures present "compelling reasons" to decline jurisdiction. Rule 23 and FLSA actions are routinely prosecuted together, and the complexities of Rule 23 and FLSA hybrid actions are a challenge that the federal judiciary, and properly instructed juries, are generally well-equipped to meet. *See e.g., Lindsay v. Government Employees Ins. Co., 448 F.3d 416 (D.C.Cir.2006).*

For the foregoing reasons, defendants' motion to dismiss (Dkt.# 25) is denied.

IT IS SO ORDERED.

W.D.N.Y.,2007.
Brickey v. Dolencorp, Inc.
--- F.R.D. ----, 2007 WL 2460613 (W.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                         FOR EDUCATIONAL USE ONLY                              Page 1
Slip Copy, 2007 WL 2295048 (N.D.N.Y.)
**(Cite as: Slip Copy)**

▷
Hudson v. I.R.S.
N.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. New York.
Paul J. HUDSON, as personal representative to the
Estate of Eleanor Hudson, Plaintiff,
v.
INTERNAL REVENUE SERVICE, Defendant.
**Civ. No. 1:03-CV-172 (TJM/RFT).**

March 27, 2007.

Office of Paul S. Hudson, P.C., Paul S. Hudson,
Esq., of Counsel, Sarasota, FL, for Plaintiff.
United States Department of Justice, Bartholomew
Cirenza, Esq., of Counsel, Washington D.C., for
Defendant.

### *REPORT-RECOMMENDATION and ORDER*
RANDOLPH F. TREECE, United States Magistrate
Judge.
**\*1** This matter comes before this Court based upon
a referral from the Honorable Thomas J. McAvoy,
Senior United States District Judge. Dkt. No. 36,
Dec. & Order, dated Dec. 8, 2006. The Order of
referral asks this Court to recommend whether (1)
the stay of this case should be lifted, (2) the instant
action should be consolidated with *United States
Dep't of Justice v. Paul S. Hudson,* 1:06-CV-763,
and (3) monetary sanctions should be assessed
against Plaintiff for failure to comply with an
Order, dated March 23, 2006. *Id.* at p. 4.

On December 20, 2006, a telephone conference was
convened to discuss these issues and others. After
this telephonic conference, this Court issued a Text
Order establishing dates for the parties to brief all
of these issues. Dkt. No. 38, Text Order, dated Dec.
20, 2006. Both parties have complied with the Text
Order's directive and filed their respective
Memorandum of Law. Dkt. Nos. 39, Pl.'s Lt-Mot.,
dated Jan. 5, 2007 (moving for consolidation), 40,
Def.'s Lt.-Br., dated Jan. 10, 2007, 41, Pl.'s Mem.
of Law, dated Jan. 17, 2007, & 42, Paul S. Hudson,

Esq., Aff., dated Jan. 17, 2007, with Ex.

We will address the above issues *seriatim.*

Unusually the Court would presume familiarity
with the facts of this case, however, we believe a
brief recitation of the more salient facts would be
helpful in our discussion. We must also take into
consideration that there is a related bankruptcy
case, which is currently on appeal. *See United
States Dep't of Justice v. Hudson,* Civil Case No.
06-CV-763 (FJS). It appears that these parties have
been litigating matters for more than a decade. The
initiation of this overall, all consuming, and never-
ending litigation apparently began in the
Bankruptcy Court in the Northern District of New
York. Bkrptcy. Case No. 00-11683.An Order of the
Bankruptcy Court has been appealed to the District
Court and the Honorable Frederick J. Scullin, Jr.,
Senior District Court Judge, has been assigned to
decide the appeal. As identified above, Judge
McAvoy is the District Judge assigned to decide
this matter, and because the facts of the bankruptcy
matter and this litigation may be inextricably
interlaced, hence the discussion on whether these
matters should be consolidated.

### A. Bankruptcy Case

Without perusing too deeply into the pleadings and
memoranda of law filed with the Bankruptcy Court,
succinctly, Attorney Paul S. Hudson filed for
bankruptcy in the District Court of Maryland,
which was subsequently transferred to the Northern
District of New York. Bkrptcy. Case. No.
00-11683.FN1The Internal Revenue Service (IRS)
filed a proof of claim and Hudson filed objections
thereto. Discovery ensued and upon conclusion of
discovery each party filed a cross motion for
summary judgment. Dkt. No. 40 at p. 2.

> FN1. This matter probably started with the
> bankruptcy of Paul S. Hudson's business,
> Kent & Haroldsen Associates, Inc., in
> 1995, and escalated from there. *In re Kent*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                    FOR EDUCATIONAL USE ONLY                    Page 2
Slip Copy, 2007 WL 2295048 (N.D.N.Y.)
(Cite as: Slip Copy)

& *Haroldsen Assocs., Inc.,* Bkrptcy Case No. 95-10607;*Hudson v. IRS,* Civil Case No. 03-cv-172, Dkt. No. 1, Compl.

Shortly after the filing of a bankruptcy petition and objections to a creditor's claim, on or about January 3, 2000, the parties entered into a settlement agreement. Brkptcy Case Dkt. No. 00-11683, Mem.-Dec. & Order, dated May 16, 2006, at p. 2. Certain contested issues evolved around the settlement agreement and its corresponding tax consequences. Hudson's underlying objections were that IRS's claim should be disallowed and a trust fund recovery penalty ("TFRP") should not be imposed. By an Order, dated November 30, 2004, the Honorable Robert Littlefield, United States Bankruptcy Judge, held that the interest on the TFRP should be partially disallowed.*Id.* Hudson claimed that he had overpaid taxes for the tax years 1994, 1995, and 1997, and is entitled to a refund. *Id.* In his view, said overpayment or refund should be an offset against the IRS claim. The IRS disagreed. Thus, another round of summary judgment motions in the bankruptcy case ensued and the Bankruptcy Judge found, *inter alia,* that additional credits and offsets would not be granted, however, Hudson was a prevailing party as to previous summary judgment motions and therefore entitled to fees and costs. *Id.* at p. 14.This May 16, 2006 Memorandum-Decision and Order and the previous interlocutory Orders are the subject of the appeal presently before Senior District Judge Scullin. Dkt. No. 40 at p. 2.[FN2]

> FN2. The IRS has appealed the Bankruptcy Court's Decision and Order, dated September 7, 2004, and the Memorandum-Decision and Order, dated November 30, 2004. One of the grounds for appeal is that Bankruptcy Judge Littlefield erroneously adopted the reasoning of Senior District Judge McAvoy's March 25, 2004 Order in this case. *See infra* Part I.B. The appeal before Senior Judge Scullin is fully briefed and awaiting a decision.

### B. Present Litigation

*2 The allegations of the current litigation are concomitant to the bankruptcy litigation. Eleanor Hudson commenced this action because, as she claims, she was assessed as a responsible person for the TFPR arising out of the *Kent & Haroldsen Assocs., Inc.* Bankruptcy Case and a lien was improvidently levied against her property. Dkt. No. 1, Compl. at ¶ 6. Eventually the parties entered into a settlement of the IRS claim. *Id.* at ¶ 7. However, the IRS assessed interest and penalties on the settlement amount, which Eleanor Hudson, now her estate, claims was improper. *Id.* at ¶ 9. Later, Eleanor Hudson learned that she and her husband made overpayments on their taxes, were due a refund, and sought to have the overpayment offset against the principal of the settlement agreement. *Id.* at ¶¶ 12 & 14.Now the estate seeks, *inter alia,* to have the IRS liens discharged, her portion of any tax liability deemed paid, and the return of a tax refund in the amount of $6,000. *Id.* at Wherefore Clause.

Cross Motions for Summary Judgments were filed in this case. *See generally* Dkt. Nos. 8, 12-17, & 20-23. By a Memorandum-Decision and Order, dated March 25, 2004, Senior District Judge McAvoy denied the IRS's Motion and granted in part and denied in part Hudson Estate's Cross Motion. Dkt. No. 24.The gist of Judge McAvoy's Order is that, pursuant to the Stipulation of Settlement, the Hudson Estate's total liability to the IRS as of January 2, 2000, with interest and penalties is $30,838.49. *Id.* at p. 25.Further, the District Court directed that discovery be pursued first and then final summary judgment motions may be filed. *Id.*

Although the core facts and issues are the same in the bankruptcy and this case, the cases became more interlocked when Hudson and the IRS asked Judge McAvoy to stay this case pending a decision from the Bankruptcy Court primarily on the pre-settlement, accrued interest liability issue. Dkt. Nos. 31, Def.'s Status Report, dated Feb. 17, 2006, 32, Pl.'s Lt.-Mot., dated Feb. 21, 2006. Accordingly, Judge McAvoy granted the stay and further ordered that "Plaintiff shall submit a Status

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                              FOR EDUCATIONAL USE ONLY                                      Page 3
Slip Copy, 2007 WL 2295048 (N.D.N.Y.)
**(Cite as: Slip Copy)**

Report ... no later than four (4) months from the date of this Order, and every four (4) months thereafter if the matter continues to be stayed ....**Failure to comply with this Order may subject [Plaintiff] to sanctions under Rule 16(f), Federal Rules of Civil Procedure."**Dkt. No 33, Order, dated Mar. 23, 2006 (emphasis added).

Pursuant to the March 23, 2006 Order, Hudson was mandated to serve a Status Report on or about July 24, 2006. *Id.* No Status Report was received by the Clerk of the Court by that date. In fact, by November 17, 2006, no status report had been received, therefore, the District Court issued an Order to Show Cause why this case should not be dismissed for failure to diligently prosecute as directed by the Court's March 23rd Order. Dkt. No. 34, Ct.-Mot., dated Nov. 17, 2006. In essence, this matter was placed on Senior District Judge McAvoy's dismissal calendar. In response to the Order to Show Cause, Hudson submitted an Affidavit in Opposition; attached to that Opposition was the delinquent Status Report. Dkt. No. 35, Paul S. Hudson, Esq., Aff., dated Nov. 29, 2006; *see also*Dkt. No. 42-2 (same), Ex.

*3 In sum, Attorney Hudson averred that:

¶ 15 he prepared a status report on July 21, 2006 and then called our Chambers to advise of the Bankruptcy Court's Decision and ask for consent to file his Status Report in hard copy. Hudson was advised that we could not consent to such filing without a court order;

¶ 16 he next attempted to obtain ECF status by filling out the online forms but did not receive back the proper notice from the Clerk of the Court;

¶ 17 concomitantly, his computer became infected with a virus;

¶ 18 he then asked a cooperating law firm to electronically file his Status Report, since he does not regularly practice before this Court, but due to some miscommunication that effort failed; and

¶ 20 he attached the Status Report to his Affidavit in Opposition to the District Court's Motion, further arguing that there was no prejudice to Defendant.

Dkt. No. 42-2, Hudson Aff., dated Nov. 29, 2006.

Senior District Judge McAvoy found Hudson's excuses without merit but would not levy any sanctions against him because of his assertion that the had contacted this Court's Chambers at the time the Status Report was due. Dkt. No. 33 at p. 3. Hence, Judge McAvoy referred the matter to this Court to determine whether monetary damages should be imposed. *Id.*

### A. Stay of Proceedings

Previously both parties asked the District Court to stay this matter because of impending Bankruptcy rulings on Hudson's objections to the IRS claim, Dkt. Nos. 31 & 32, which was granted, Dkt. No. 33.As stated above, the Bankruptcy Court's Decision and Orders are pending on appeal before Senior District Judge Scullin. While the IRS wishes the stay be continued pending a determination of the appeal, Hudson wants the stay lifted, noting that this litigation has continued for more than a decade and an expeditious resolution of these matters should be rendered as soon as possible. Dkt. No. 39 at p. 2.

From the time the parties asked the District Court to stay the case until now, nothing has changed and the reasons for granting the stay remain in effect. Because the Bankruptcy Court Orders remain on appeal, the parties' *status quo,* in this and the bankruptcy case, has not been altered in any fashion and should remain as such notwithstanding Hudson's current importune for an expedited disposition.

Hudson claims that litigating both of these cases is draining the resources of the estate and the estate cannot be closed if the IRS continues to litigate even though two courts have primarily found against it. Neither of Hudson's arguments are persuasive. We must remind Hudson that her Attorney husband initiated the bankruptcy matter, as she has done here, and filed objections to the IRS claim in bankruptcy court which has triggered in some respect the continuous nature of that litigation, and invariably this case has been prolonged by virtue of the stay pending a final

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                          FOR EDUCATIONAL USE ONLY                          Page 4
Slip Copy, 2007 WL 2295048 (N.D.N.Y.)
**(Cite as: Slip Copy)**

resolution of the bankruptcy matter; thus the compounding of expenses. We would also be remiss if we ignored the IRS' entitlement to exercise all of the legal rights afforded it in this and the bankruptcy case. This insistence on exercising these legal rights have contributed, as well, to this protracted litigation. The bankruptcy matter must be concluded before this litigation can proceed. Therefore, the amount of expenditures and the consumption of time, under these circumstances, are not sufficient reasons to lift the stay.

**\*4** We recommend that the Request for the Stay to be Lifted be **denied** and the Stay remain until the bankruptcy matter has been appropriately concluded.

### B. Consolidation

Again, the parties disagree on whether the bankruptcy appeal and this matter should be consolidated. Although there are currently two related matters before two different District Judges, apparently arising out similar facts and issues, one is an appeal and the other litigation is slated for a trial resolution. As previously noted, integrated within the "same facts and issues" argument is the notion that the Bankruptcy Court's November 2004 Order is premised upon Senior District Court Judge McAvoy's reasoning in his March 25, 2004 Order. *See*Dkt. No. 39 at p. 2 ("Judge McAvoy has already ruled on the issue of pre-settlement interest and that decision has been followed by Bankruptcy Judge Littlefield[.]"), & Dkt. No. 40 at p. 2 ("[T]he Bankruptcy Court ... adopt [ed] the reasoning of the District Court as to the interest issue.").

Consolidation is a "valuable and important tool of judicial administration."*Consorti v. Armstrong World Indus., Inc.,* 72 F.3d 1003, 1006 (2d Cir.1995), *vacated on other grounds,*518 U.S. 1031 (1996). The authority to consolidate lawsuits is found in the Federal Rules of Civil Procedure:
When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions

consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

FED. R. CIV. P. 42(a).

It is commonly understood that this Federal Rule gives broad discretion to the trial judge to consolidate legal actions, *sua sponte. Devlin v. Transp. Commc'n Int'l Union,* 175 F.3d 121, 130 (2d Cir.1999) (noting that a court can act *sua sponte* ); *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir.1990). In fact, there generally appears to be a default to consolidate actions where judicial economy is concerned. *Johnson v. Celotex Corp.,* 899 F.2d at 1284 (finding that "courts have taken the view that considerations of judicial economy favor consolidation"); *Bank of Montreal v. Eagle Assocs.,* 117 F.R.D. 530, 532 (S.D.N.Y.1987) ("[C]onsiderations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event.") (citations omitted).Rule 42 is essentially "invoked to expedite trial and eliminate unnecessary repetition and confusion."*Devlin v. Transp. Commc'n Int'l Union,* 175 F.3d at 130 (citations omitted). Further, another primary and indisputable objective of consolidation is to prevent separate actions from producing conflicting results. *OHM Remediation Servs. Corp. v. Hughes Envt'l Sys., Inc.,* 952 F.Supp. 120, 121 (N.D.N.Y.1997) (citing *Bank of Montreal v. Eagle Assocs.,* 117 F.R.D. at 533). And yet, this blanket discretion does require courts to consider
**\*5** [w]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.... When considering consolidation, a court should also note that the risks of prejudice and confusion may be reduced by the use of cautionary instructions to the jury and verdict sheets outlining the claims of each plaintiff.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                FOR EDUCATIONAL USE ONLY                                Page 5
Slip Copy, 2007 WL 2295048 (N.D.N.Y.)
(Cite as: Slip Copy)

*Johnson v. Celotex Corp.,* 899 F.2d at 1285 (citations omitted);

Consideration of convenience and economy sometimes has to yield to the paramount concern for a fair and impartial trial. *Malcolm v. Nat'l Gypsum Co.,* 995 F.2d 346, 350 (2d Cir.1993); *Bank of Montreal v. Eagle Assocs.,* 117 F.R.D. at 532 (noting that confusion and prejudice may be the results of an unwary consolidation). Moreover, "efficiency cannot be permitted to prevail at the expense of justice-consolidation should be considered when 'saving of expense and gains of efficiency can be accomplished *without sacrifice of justice.'* " *Devlin v. Transp.,* 175 F.3d at 130 (quoting *Consorti v. Armstrong World Indus. Inc.,* 72 F.3d at 1007) (quotation and emphasis in original). That paramount concern proscribes that courts not succumb to "[t]he systemic urge to aggregate [similar] litigation [which would] trump our dedication to individual justice, and we must take care that each individual plaintiff's-and defendant's-cause not be lost in the shadow[s][.]" *In re Brooklyn Navy Yard Asbestos Litig.,* 971 F.2d 831, 853 (2d Cir.1992) (cited in*Malcolm v. Nat'l Gypsum Co.,* 995 F.2d at 350) (noting that courts should be "mindful of the dangers of a streamlined trial process in which testimony is curtailed and jurors assimilate vast amounts of information); *see also Kelly v. Kelly,* 911 F.Supp. 66, 69 (N.D.N.Y.1996) (for the proposition that the court must balance the efficiency concerns against the potential for prejudice); *Solvent Chem. Co. ICC Indust., Inc. v. E .I. Dupont De Nemours & Co.,* 242 F.Supp.2d 196, 221 (W.D.N.Y.2002); *Erwin-Smith v. K-mart Corp.,* 1999 WL 429505, at *1 (N.D.N .Y. June 22, 1999). Hence, courts must examine the "specific underlying facts" with "close attention" before ordering consolidation. *In re Repetitive Stress Injury Litig.,* 11 F.3d 368, 373 (2d Cir.1993). Furthermore, the burden rests with the party moving for consolidation to not only show the commonality of facts and law, *Sidari v. Oleans County,* 174 F.R.D. 275, 281 (W.D .N.Y.1996), but to convince the court that there would not be any unnecessary delays or confusion, *Kelly v. Kelly,* 911 F.Supp. at 69 (finding that consolidation may

burden the parties, the court, and the jury "with an over complication of issues and necessary instructions").

*6 Hudson's chief argument in support of consolidation is that there is the possibility of conflicting decisions on the issues in these cases if not granted. Dkt. No. 39 at p. 2.[FN3] Much like her argument for lifting the stay, because Judge McAvoy has already decided the pre-settlement interest issue, there is a fear that Judge Scullin could very well stake a contrary position, thereby creating divergent rulings. And, by directing this appeal to Judge McAvoy, considering that he has already ruled on the issue, the appeal would be addressed much more quickly, reducing cost and time, and eliminating the possibility of contrary rulings.

> FN3. Hudson's reliance upon FED. R. CIV.
> P. 20 and 21 are misplaced. Dkt. No.
> 39.These two sections deal with joinders
> and misjoinders of parties and neither is an
> issue before this Court. FED. R. CIV. P. 42
> is the appropriate statute when considering
> consolidation. Therefore Rules 20 and 21
> will not be considered.

On the other hand, the IRS argues that cases are normally consolidated for a joint determination and not to accord a party who has prevailed in one case or one leg of multi-faceted litigation with an advantage in the other. According to the IRS, transferring the bankruptcy appeal to Judge McAvoy who has already decided a substantially similar issue would cause an unfair advantage. Further, the IRS claims that the consolidation in this case would cause confusion and possibly prejudice. Continuing, the IRS contends that it is unprecedented to consolidate an appeal within the District Court's appellate realm (bankruptcy court to district court pursuant to 26 U.S.C. § 158(a)), which is akin to a mid-level appeals courts, with a pending trial court matter. And, lastly, in its view, the Bankruptcy and District Court cases do not present common questions of law and fact even though Bankruptcy Judge Littlefield followed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                         FOR EDUCATIONAL USE ONLY                              Page 6
Slip Copy, 2007 WL 2295048 (N.D.N.Y.)
(Cite as: Slip Copy)

Judge McAvoy's reasoning on the accrued interest issue. Dkt. No. 40.

We agree with the IRS that it is unprecedented to consolidate an appeal and a trial matter and such consolidation would be treading on perilous ground. Although the Bankruptcy and this District case have a common theme and core, we are not certain that they are so inextricably interlocked on every facet to authorize consolidation. Just because two cases are related does not necessarily portend that they should be co-joined. We should not succumb therefore to a systemic urge to aggregate similar litigation for the sole purpose of saving time and money. There are times, such as this, where convenience and cost have to yield to the principles of a fair and impartial trial and appeal. The last thing we would want to do is compromise or sacrifice justice for either party by rushing in and consolidating without appreciating all of the ramifications and consequences. We agree that consolidation would breed confusion and risk prejudice. On balance, we are more persuaded by the IRS' arguments than Hudson's and thus, Hudson has failed to meet her burden. Therefore, we recommend that Plaintiff's Motion for Consolidation be **denied.**

### C. Sanctions

Senior District Judge McAvoy referred this matter to the Court to consider whether monetary sanctions should be imposed pursuant to FED. R. CIV. P. 16(f). Pursuant to Judge McAvoy's March 23, 2006 Order, Attorney Hudson was required to submit a Status Report on July 24, 2006. Hudson failed to do so. Judge McAvoy would have considered the issue of sanctions but for Attorney Hudson's representation that he called our Chambers when the Status Report was due. Not knowing the veracity of such a claim, it is understandable why Judge McAvoy would forego imposing sanctions and hand off the matter of sanctions to us for a Report and Recommendation inasmuch as we would be in a better position to confirm or challenge Attorney Hudson's veracity. Now we must consider Attorney Hudson's

averments and excuses in the context of Rule 16(f).

*7 Rule 16(f) reads as follows:

If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

FED. R. CIV. P. 16(f); *see also Ashlodge, Ltd. v. Hauser,* 163 F.3d 681, 683 (2d Cir.1998) (ruling that a court may impose sanctions, under Rule 16(f), when an attorney disobeys a scheduling or pretrial order).

We must remember that a scheduling order exists to enable the court to manage the conduct and disposition of cases, and should not be ignored blithely, *Bernstein v. Bernstein,* 1993 WL 466402, at *1 (E.D.N.Y. Aug. 13, 1993); when they are sanctions as serious as dismissal of the case may be in order. *Rivera v. Bushey,* 2007 WL 1677909 (N.D.N.Y. Jan. 18, 2007). Since Rule 16(f) has incorporated portions of FED. R. CIV. P. 37(b)(2)(B), said sanctions should be levied consistent with that civil rule's principles. *GSGSB, Inc. v. New York Yankees,* 122 F.3d 1056, 1997 WL 383543, at *5 (2d Cir.1997) (unpublished opinion). Sanctions pursuant to Rule 16(f), much like Rule 37(b), must be based upon an explicit court order. *Salahuddin v. Harris,* 782 F.2d 1127, 1133 (2d Cir.1986). Now that Rule 16(f) expressly provides for the impositions of sanctions for disobedient parties and/or attorneys, we turn to some of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

principles of sanctions that have developed from Rule 37(b)(2)(B).FED. R. CIV. P. 16(f) Advisory Committee Notes.

Sanctions serve several purposes: 1) to ensure that the offending party will not be able to profit from the failure to comply; 2) to provide a strong deterrence to the non-compliant party and to others in the public; and 3) to secure compliance with an order. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979); *Trehern v. OMI Corp. et al.,* 1999 WL 47303, at *8 (S.D.N.Y. Feb. 1, 1999). A spectrum of sanctions are available ranging from the mildest, such as, reimbursment for expenses, to the harshest, an order of dismissal or default. *Cine Forty-Second Street Theatre Corp.,* 602 F.2d at 1066;*see also Valentine v. Museum of Modern Art,* 29 F.3d 47, 49 (2d Cir.2004).

The imposition of sanctions under Rule 37 is within the discretion of the court. *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir.2002) (citing *Selletti v. Carey,* 173 F.3d 104, 110 (2d Cir.1999)); *see also Valentine v. Museum of Modern Art,* 29 F.3d at 49;*Scott v. Town of Cicero,* 1999 WL 102750, at *2 (N.D.N.Y. Feb. 24, 1999) (Munson, J.). Before imposing sanctions the court may consider: (1) the history of the party's failure to comply with court orders; (2) whether the party violating the order was given ample time to respond; (3) the effectiveness of alternative sanctions; (4) whether the non-complying party was warned and given an opportunity to argue the impending sanctions; (5) the prejudice to the adversary caused by the failure to comply; (6) whether the document at issue would normally be readily obtainable; and (7) the extent of the party's personal responsibility. *Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 852-54 (2d Cir.1995); *Momah v. Messina Mem'l. Hosp. & Bond,* 1998 WL 129045, at *5 (N.D.N.Y. Mar. 6, 1998) (quoting *Burke v. ITT Automotive, Inc.,* 139 F.R.D. 24, 33 (W.D.N .Y.1991)).

**\*8** The imposition of sanctions is a drastic remedy and should be considered when it has been established that a party's noncompliance or failure was due to wilfulness, bad faith or a callous disregard of the responsibilities mandated by the Federal Rules of Civil Procedure or a court order. *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 639-40 (1976) (citing *Societe Internationale v. Rogers,* 357 U.S. 197, 212 (1958)); *State of New York v. Almy Brothers, Inc.,* 1998 WL 57666, at *9 (N.D.N.Y. Feb. 4, 1998) (McCurn, J); *Hinton v. Patnaude,* 162 F.R.D. 435, 439 (N.D.N.Y.1995) (McAvoy, J) (flagrant bad faith). Moreover, gross negligence on the part of a non-compliant party can suffice as wilful and flagrant bad faith, and in some instances, ordinary negligence may be sufficient as well. *Cine Forty-Second Street Theatre Corp.,* 602 F.2d at 1068 (deliberate tactical intransigence and/or gross negligence); *see also Residential Funding Corp.,* 306 F.3d at 99 (ordinary negligence); *Burks v. Eagan Real Estate Inc.,* 742 F.Supp. 49, 51-52 (N.D.N.Y.1990) (drastic remedy of a default judgment should not be considered unless the failure to comply was the result of bad faith or gross negligence).

In order for an act to constitute wilfulness, the court's order must be clear and there is no misunderstanding of the intent of the order, and, further, there is no other factor beyond the party's control which contributed to the non-compliance. *Bambu Sales,* 58 F.3d at 852-53. And a " 'party's persistent refusal to comply with a discovery order' presents sufficient evidence of willfulness or bad faith."*Handwerker v. AT & T Corp.,* 211 F.R.D. 203, 209 (S.D.N.Y.2002) (quoting *Monaghan v. SZS 33 Assoc., L.P.,* 148 F.R.D. 500, 509 (S.D.N.Y.1993) (noting that "unexcused failure to comply with two discovery orders warranted dismissal")). However, this statute permits the saving grace of substantial justification or harmlessness to blunt the impact of sanctions.*Grdinich v. Bradlees,* 187 F.R.D. 77, 79 (S.D.N.Y.1999) (citing *Hinton v. Patnaude,* 162 F.R.D. at 439)). Substantial justification in this context means "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                    FOR EDUCATIONAL USE ONLY                    Page 8
Slip Copy, 2007 WL 2295048 (N.D.N.Y.)
(Cite as: Slip Copy)

the disclosure request."*Jockey Int'l, Inc. v. M/V "Leverkusen Express,"* 217 F.Supp.2d 447, 452 (S.D.N.Y.2002) (quoting *Henrietta D. v. Giuliani,* 2001 WL 1602114, at *5 (E.D.N.Y. Dec. 11, 2001) (further citations omitted)). There is no exception to honoring and respecting court orders. All litigants and litigators must comply and when they flout their obligation, they must suffer the consequences of such action. *Baker v. Ace Advertisers' Serv. Inc.,* 153 F.R.D. 38, 40 (S.D.N.Y.1992).

Attorney Hudson does not complain that Rule 16(f) is not the applicable statutory provision. In determining sanctions in this case, we concur, albeit indirectly, with Attorney Hudson that prejudice and/or delay should not be a basis. In fact, they are not the gravamen on this discourse on sanctions. The crux of the matter is whether there was an explicit order in place and a violation of that specific order had occurred. Dkt. No. 42-2.It is incontroverted that Attorney Hudson was compelled to provide a Status Report by an explicit order and if he failed to do so he was put on notice, which was exquisitely transparent, that he would be subject to Rule 16(f) sanctions. *See supra* Part I.B at p. 5. There should be no misunderstanding as to the intent of the Order.

*9 Initially, we state that we harbor the same skepticism as Judge McAvoy as to whether Attorney Hudson has provided substantial justification for his commission or omission as it may relate to the March 23, 2006 Order. Dkt. No. 32.In his Affidavit, Attorney Hudson asseverates that on July 21, 2006, he called our Chambers rather than Judge McAvoy's Chambers to advise us that the Bankruptcy Court has issued a decision in the related case and to request consent to submit a Status Report in hard copy. Dkt. No. 42-2 at ¶ 15.In his Memorandum of Law, Attorney Hudson states that "a verbal status report was telephoned to [our] chambers ... timely ."Dkt. No. 41 at p. 1. No one in this Chambers has any recollection accepting a call from Attorney Hudson wherein he gave us a verbal Status Report.[FN4]Had there been a verbal Status Report, as claimed, it is our practice to make a chamber note on the case docket to that effect. As

such, the internal case docket does not reflect such a call. We would agree, however, that had Attorney Hudson asked for consent to file a hard copy Status Report as opposed to electronically, my clerks would have advised him that they could not consent without a court order. Moreover, if we had the province to extend permission to file a hard copy in this case, it would have been denied. We had already issued an Order, dated June 21, 2004, exempting Attorney Hudson from electronic filing "for the last time." Dkt. No. 26.Under the circumstances, we would have remained steadfast and declined Attorney Hudson's application to avoid his responsibilities under ECF. However, what is more disquieting about this purported phone call to our Chambers, is that there was no need or obligation for such a call to us. We did not issue the Order directing the filing of a Status Report. Judge McAvoy issued that Order and the call should have been to his Chambers asking for permission to file a hard copy of the Status Report and not to us. If my clerk advised Attorney Hudson that we needed an order before consenting, logically you would conclude that a subsequent request would have been rightfully made to the District Court that issued the previous Order. Apparently none was made.

> FN4. Chamber staff is small and any phone call to Chambers would have been accepted by only three persons other than yours truly. Yours truly spoke with his staff and no one recalls this purported phone call and there is no notation on anyone's phone pad that such a call was received.

Next, Attorney Hudson avers "that he attempted to obtain ECF status by filling out the online forms which would contact him by email. However, [he] did not receive any email response and was advised by the Clerk Office that they had no control over the system ."Dkt. No. 42-2 at ¶ 16.However, in his Memorandum of Law, Attorney Hudson asserts that there was an "unwillingness of the magistrate judge's chambers or court clerk to permit filing of the written report in paper form."Dkt. No. 41 at p.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                    FOR EDUCATIONAL USE ONLY                                    Page 9
Slip Copy, 2007 WL 2295048 (N.D.N.Y.)
(Cite as: Slip Copy)

2. We do not understand what Attorney Hudson is attempting to impute here. He has not made himself clear as to this assertion. Is he suggesting that he attempted to file the Status Report electronically and did not receive, in return, a electronic notification? Is he also suggesting that the Clerk's Office, realizing that there was a glitch with the system, refused to permit him to file a hard copy of the Status Report? It seems inconceivable to us that the Clerk's Office, who has the primary authority to manage the ECF system, would deny anyone permission to file a legal document timely when the system has failed. We are familiar with the Clerk Office's practice and they routinely grant or seek court permission to parties to serve their legal papers timely if there is a systematic malfunction, whether at the sender's or receiver's end. We have never heard of the Clerk's Office denying a party an opportunity to file legal papers timely and in conventional format when electronic filing has gone awry, without first conferring with the court. In this context, we note that on February 21, 2006, Attorney Hudson electronically filed a Letter-Motion without any difficulty.Dkt No. 32.In conjunction with this ECF filing debacle, Attorney Hudson claims that his "main computer became infected with a virus and [he] was unable to get on line[.]"[FN5]Dkt. No. 42-2 at ¶ 17.For this reason alone, the Clerk's Office would have accommodated Attorney Hudson and permitted or sought court permission for conventional filing of papers. Credibility has been stretched beyond recognition by these claims.

> FN5. This is not the first time that Attorney Hudson has claimed that a computer virus, among other events, has contributed to his belated filing of legal papers. *See*Dkt. No. 21, Pl.'s Reply Affirmation, dated Sept. 23, 2003, at ¶ 2.

*10 Juxtaposed to all of the problems stated above, Attorney Hudson avers that he asked another firm to electronically transmit his papers for him.Dkt. No. 42-2 at ¶ 18.But based upon miscommunication that he just "received recently," his Status Report was not filed electronically. This asseveration lacks

details and concerns us however. We must ask since it has not been provided: what miscommunication; when did this miscommunication occur; and why didn't Attorney Hudson react more swiftly and speak with either the Clerk's Office or Judge McAvoy's Chambers about this issue. It is unfathomable as it is improbable that an attorney who volunteers to assist another attorney to properly file his papers electronically would fail to promptly inform that his mission had failed so that another timely resolution could be utilized.

Lastly, our disbelief has been elevated upon reviewing the July 21, 2006 Letter which was attached to Attorney Hudson's Opposition to the Order to Show Cause. Dkt. No. 42-2.In fact, its submission is rather eccentric. This purported Status Report is replete with handwriting in the margins, phrases lined out, words added and deleted. This document constitutes at best a draft. It is hard to accept that this is the document Attorney Hudson attempted to file with the Court for more than four months. It is unimaginable that Attorney Hudson was attempting to transmit such a document electronically. And, if it was Hudson's intention to submit this document in this redacted, unprofessional, and slovenly manner as early as July 21, 2006, three days before it was due, it would have been a first for him. This Court has perused every legal document Attorney Hudson has filed in this and the bankruptcy case and none are infirm with such imperfections. In fact, we do not discern any handwriting on any of these others documents. All of this ascribes to our mighty suspicion that Attorney Hudson was grossly negligent, if not intransigent, in complying with Judge McAvoy's Order. *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1068 (2d Cir.1979); *Burks v. Eagan Real Estate Inc.,* 742 F.Supp. 49, 51-52 (N.D.N.Y.1990).

Scheduling orders should not be ignored blithely nor trifled with, without some peril or consequence. *Bernstein v. Bernstein,* 1993 WL 466402, at *1 (E.D.N.Y. Aug. 13, 1993). Such lack of attention to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

details and responsibilities pursuant to this Court Order warrants sanctions. We find none of Hudson's excuses plausible and they do not rise to the level of a substantial justification. To the contrary, it is implausible that all of these events could have occurred to prevent a remotely timely filing of the Status Report. The credibility of all of these coincidences bearing down on a timely filing of a Status Report is too much to accept. All of the above constitutes inexcusable conduct. We concur with the District Court that dismissal of the action is not warranted under these circumstances. Because said late filing did not cause any delay since this case is already stayed, and no prejudice has been visited upon the IRS, the mildest form of sanctions is appropriate. Accordingly, we recommend that Attorney Hudson be sanctioned in the amount of $150.

*11 For the reasons stated herein, it is hereby

**RECOMMENDED,** that Hudson's Motion to Lift the Stay and to Consolidate the Bankruptcy Appeal with this Case (Dkt. No. 39) be **denied;** and it is further

**RECOMMENDED,** that the March 23, 2006 Order (Dkt. No. 33) shall remain in effect; and it is further

**RECOMMENDED,** that Attorney Paul S. Hudson pay the sum of $150 as a sanction and that he be directed to pay said sanction within thirty (30) days from the District Court's Order to the Clerk of the Court.

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and*

*Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

**IT IS SO ORDERED.**

N.D.N.Y.,2007.
Hudson v. I.R.S.
Slip Copy, 2007 WL 2295048 (N.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 2397193 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

**C**
Medina v. New York State Dept. of Correctional
Services
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Anthony MEDINA, Plaintiff,
v.
NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES, et al., Defendants.
**No. 03 Civ.9249(RWS).**

Oct. 26, 2004.

Sidley Austin Brown & Wood, New York, NY, By:
Robin B. Skarstad, Nicholas K. Lagemann, for
Plaintiff, of counsel.
Honorable Eliot Spitzer, Attorney General of the
State of New York, Mineola, NY, By: Valerie
Singleton, Assistant Attorney General, for
Defendants, of counsel.

SWEET, J.
**\*1** Plaintiff Anthony Medina ("Medina") has
noticed the voluntary dismissal of this proceeding
pursuant to Rule 41(a)(1)(i) of the Federal Rules of
Civil Procedure and defendants New York State
Department of Correctional Services, Donna
Masterson, Glenn Goord, James Walsh, Daniel
Senkowski, Dale Arus, R.W. Santor, John Mitchell,
R. Ano, Michael McGinnis, Bernard Obremski,
George B. Duncan, Gary Greene, Paul Bundrick,
and John Serhan (collectively, "Defendants") have
opposed such dismissal. For the reasons set forth
below, voluntary dismissal is proper and this case is
closed.

*Prior Proceedings*

On March 15, 1991, a class action was brought on
behalf of all present and future deaf and hard-
of-hearing inmates in the New York State
correctional system. The class alleged that the New
York State Department of Correctional Services
("DOCS") violated their rights under the
Rehabilitation Act, 29 U.S.C. § 794, the Americans
with Disabilities Act ("ADA"), 42 U.S.C. §
12131*etseq.,* the Eighth, Ninth and Fourteenth
Amendments to the U.S. Constitution, and 42
U.S.C. § 1983. On February 3, 1992, the *Clarkson*
defendants' motion to dismiss was denied,
see*Clarkson v. Coughlin,* 783 F.Supp. 789
(S.D.N.Y.1992), and on January 25, 1993, two
plaintiff sub-classes were certified, sub-classes
comprised of all present and future deaf and
hearing-impaired male and female inmates of the
New York State Department of Correctional
Services "who have been, are, or will be
discriminated against, solely on the basis of their
disability, in receiving the rights and privileges
accorded to all other inmates."*Clarkson v.
Coughlin,* 145 F.R.D. 339, 348 (S.D.N.Y.1993).

On August 3, 1994, the class moved for a
declaratory judgment, permanent injunctive relief
and summary judgment. On June 16, 1995, this
Court issued an opinion and order granting in part
and denying in part the plaintiffs' motion, and
concluding that the *Clarkson* defendants had
violated the plaintiffs' statutory and constitutional
rights when they failed, *interalia,* to provide deaf
and hearing-impaired inmates with sign language
interpreter services and other assistive
communication devices during reception,
classification, educational, vocational, counseling,
medical and mental health encounters and during
disciplinary, grievance and parole proceedings.
See*Clarkson v. Coughlin,* 898 F.Supp. 1019
(S.D.N.Y.1995).

On June 6, 1996, the parties in *Clarkson v.
Coughlin* entered into a consent order and judgment
that was ordered by the Court (the "Consent
Decree"). The Consent Decree outlines, in
considerable detail, the relief to which the class is
entitled and provides a mechanism for compliance
with the judgment.

On or before October 21, 2003, Medina moved by
order to show cause in *Clarkson v. Coughlin* to
hold Defendants in contempt of the Consent Decree

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                          Page 2
Not Reported in F.Supp.2d, 2004 WL 2397193 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

and for a temporary restraining and preliminary injunctive relief.

By order dated October 23, 2003 and filed October 28, 2003 (the "October 2003 Order") entered in *Clarkson v. Coughlin* and certain related actions, this Court set forth the procedures to be followed by inmates filing motions and other papers seeking monetary relief to enforce the Consent Decree in *Clarkson v. Coughlin.* Pursuant to the October 2003 Order, "[e]ach prisoner will file a complaint with the Clerk's Office, which will be assigned a separate docket number, and will be designated as a related case to *Clarkson v. Goord.*"(October 2003 Order, at 2.) The October 2003 Order specifies that all prisoners filing a complaint after the date of the October 2003 Order will be required "to first submit their complaints for resolution to an ombudsperson appointed by the State. This ombudsperson will determine whether the prisoner is a member of the class covered by the decree and whether a violation occurred."(*Id.*)

**\*2** Pursuant to an order dated November 14, 2003 and filed November 17, 2003 (the "November 2003 Order"), and "[n]otwithstanding" the October 2003 Order, Medina's motion was assigned its own docket number and designated as related to *Clarkson v. Coughlin.*(November 2003 Order, at 1.)

Discovery proceeded, a hearing on Medina's motion for contempt and a preliminary injunction was scheduled and repeatedly adjourned, and on March 29, 2004, Medina noticed the voluntary dismissal of this proceeding pursuant to Rule 41(a)(1)(i), Fed.R.Civ.P. Defendants have opposed voluntary dismissal, and following the submission of various materials on and before April 27, 2004, the matter was deemed fully submitted.

*Discussion*

Medina argues that Rule 41(a)(1)(i), Fed.R.Civ.P., explicitly provides that a plaintiff may notice voluntary dismissal without leave of court "at any time before service by the adverse party of an answer or of a motion for summary judgment."Fed.R.Civ.P. 41(a)(1)(i). As Defendants

have neither filed an answer nor a motion for summary judgment, Medina asserts that dismissal of this matter under Rule 41(a)(1)(i) is proper and that, while Medina "has no intention to bring another action based on the facts involved in this matter," the Federal Rules of Civil Procedure make clear that a voluntary dismissal is without prejudice. (Letter of Nicholas K. Lagemann to the Court, dated March 30, 2004, at 2.)

Defendants argue that any dismissal of the instant proceeding should be with prejudice, in light of the substantial resources invested by Defendants in litigating this matter to the eve of a hearing. Defendants further contend that this matter was treated as a separate contempt proceeding under the *Clarkson* Consent Decree and only assigned a separate docket number for housekeeping purposes. Accordingly, Defendants argue, any dismissal should be effected by the filing of a stipulation of dismissal signed by all parties who have appeared, pursuant to Rule 41(a)(1)(ii), Fed.R.Civ.P., or by order of the court "and upon such terms and conditions as the court deems proper."Fed.R.Civ.P. 41(a)(2). If Medina's proceeding is dismissed without prejudice, Defendants argue that Medina should reimburse Defendants for their costs incurred in preparing for the contempt hearing and that he should be precluded from bringing a subsequent action based on the underlying facts at issue here.

*Dismissal Without Prejudice Is Appropriate*

Rule 41(a)(1), Fed.R.Civ.P., provides, in pertinent part, that:
[A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs.... Unless otherwise stated in the notice of dismissal ..., the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any action of the United States or of any state an action based on or including the same

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    FOR EDUCATIONAL USE ONLY    Page 3
Not Reported in F.Supp.2d, 2004 WL 2397193 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

claim.

*3    Fed.R.Civ.P.    41(a)(1).Rule    41(a)(1)    thus provides for "automatic dismissal" without court order, subject to the provisions of Rules 23(e) and 66, Fed.R.Civ.P., if a plaintiff files a notice of voluntary dismissal before the defendant has either answered or moved for summary judgment.*Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.,* 71 F.3d 1053, 1055 n. 2 (2d Cir.1995).

"Within the limitations set forth by the rule itself, the right to dismiss pursuant to Rule 41(a)(1) is 'absolute." ' *In re WorldCom, Inc. Sec. Litig.,* Nos. 03 Civ. 4496*etal.,* 2003 WL 23095478, at *2 (S.D.N.Y. Dec. 30, 2003) (quoting *Bressler v. Liebman,* No. 96 Civ. 9310(LAP), 1998 WL 167334, at *2 (S.D.N.Y. Apr. 8, 1998)). Thus, where the conditions set forth in the Rule have been met, "neither the Court nor a defendant may prevent Rule 41(a)(1)(i) dismissal." *Bressler,* 1998 WL 167334, at *8;*seealsoBarr Bros. & Co. v. Senft,* No. 82 Civ. 5007, 1982 WL 1342, at *3 (S.D.N.Y. Oct. 27, 1982) ("The consensus of opinion is that Rule 41(a)(1) means just what it says-if no answer or motion for summary judgment has been served, the plaintiff has the unilateral right to discontinue his action. There is no discretion of the court involved."). The "[m]ere expenditure of time and money by a defendant ... does not bar a plaintiff from timely dismissing an action under Rule 41(a)(1)(i)." *Johnson Chem. Co. v. Home Care Prods., Inc.,* 823 F.2d 28, 31 (2d Cir.1987), *abrogated on other grounds by**Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990).

Although a plaintiff may enjoy the unfettered ability to dismiss an action under Rule 41(a)(1)(i), "Once the defendant has filed a summary judgment motion or answer," however, "the plaintiff may dismiss the action only by stipulation, or by order of the court, upon such terms and conditions as the court deems proper."*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 394, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (citations omitted). The Supreme Court has noted that Rule 41(a)(1)"allow[s] a plaintiff to dismiss an action

without the permission of the adverse party or the court only during the brief period before the defendant ha [s] made a significant commitment of time and money."*Id.* at 397.

*In re WorldCom,* 2003 WL 23095478, at *2 (alterations in original).

Courts have construed Rule 41(a)(1) strictly in determining whether voluntary dismissal has been foreclosed by the interposing of an answer or summary judgment motion. *See,e.g.,Santiago v. Victim Servs. Agency,* 753 F.2d 219, 222 (2d Cir.1985) (noting that the wording of Rule 41 is "unambiguous" and emphasizing that "[o]nly the occurrence of one of the two events specified in the rule can cut off the plaintiff's right unilaterally to dismiss the action"), *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990).

In this vein, courts have repeatedly rejected arguments that events or filings other than answers or motions for summary judgment may be deemed the "equivalent" of those items for purposes of Rule 41(a)(1).*See,e.g.,Santiago,* 753 F.2d at 221-22 (declining to treat the defendants' opposition to a motion for a preliminary injunction or their involvement in a multi-day hearing on the motion "as the equivalent of an answer or a motion for summary judgment under Rule 41"); *Thorp v. Scarne,* 599 F.2d 1169, 1173 (2d Cir.1979) (rejecting the argument that a brief accompanied by supporting affidavits and submitted in opposition to an application for a temporary restraining order might be treated as the "equivalent" of a motion for summary judgment and commenting that "Defendants, not surprisingly, have cited no authority for the proposition that arguments advanced in a party's memorandum of law may be considered the equivalent of motions properly filed and served"); *Sheldon v. Amperex Elec. Corp.,* 52 F.R.D. 1, 7-9 (E.D . N.Y.1971) (rejecting the defendant's argument that extensive discovery should be treated as the equivalent of an answer for purposes of Rule 41(a)(1)(i)); *compareYosef v. Passamaquoddy Tribe,* 876 F.2d 283, 286 (2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d     FOR EDUCATIONAL USE ONLY     Page 4
Not Reported in F.Supp.2d, 2004 WL 2397193 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Cir.1989) (concluding that where a motion to dismiss brought pursuant to Rule 12(b)(6), Fed.R.Civ.P., "ripens into one for summary judgment, the right to voluntary dismissal is extinguished at the time the motion is served"). As the Second Circuit has explained,

**\*4** Obviously, Rule 41(a)(1)(i) dismissals will no longer be self-executing, as intended, if there is to be frequent judicial intervention for the purpose of determining whether the "equivalent" of an answer or a motion for summary judgment has been served or for the purpose of weighing whether the merits have been sufficiently considered by the court to warrant terminating the plaintiff's right to dismiss the proceedings.

*Thorp,* 599 F.2d at 1176.

It is undisputed that Defendants have not filed either an answer or a motion for summary judgment denominated as such, although they suggest that their opposition papers to Medina's contempt motion could serve as the equivalent of an answer or motion for summary judgment. In light of the authorities discussed above, *see,e.g.,Santiago,* 753 F.2d at 221-22;*Thorp,* 599 F.2d at 1173, no such equivalence may be found, and on a strict reading of Rule 41(a)(1)(i) voluntary dismissal would appear to be entirely appropriate.

Defendants urge, however, that the instant proceeding was not filed as a separate action which would necessitate an answer or motion for summary judgment since it was instituted by means of a civil contempt motion and order to show cause for temporary relief, and only assigned a separate docket number as the result of the terms of the November 2003 Order. According to Defendants, it follows that Medina is not entitled to dismiss the proceeding voluntarily as a matter of right under Rule 41(a)(1)(i), and may only dismiss the proceeding pursuant to the terms of Rule 41(a)(2), Fed.R.Civ.P.

Pursuant to Rule 41(a)(2), except as provided under subsection (1) of Rule 41(a), "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."Fed.R.Civ.P. 41(a)(2)."Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."*Id.*"A district court may allow a plaintiff to dismiss an action [under Rule 41(a)(2) ] if the defendant will not be prejudiced thereby."*Correspondent Servs. Corp. v. First Equities Corp. of Florida,* 338 F.3d 119, 126 (2d Cir.2003)."Factors relevant to the consideration of a motion to dismiss without prejudice include the plaintiff's diligence in bringing the motion; any undue vexatiousness on plaintiff's part; the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss."*Zagano v. Fordham Univ.,* 900 F.2d 12, 14 (1990) (internal quotation marks omitted).

Defendants have posed a tantalizing problem with regard to the propriety or necessity of interposing an answer or a motion for summary judgment in a proceeding with the unusual procedural posture that this one enjoys. Even if the premise proposed by Defendants were adopted, however, it does not follow that dismissal under Rule 41(a)(2)-which, like Rule 41(a)(1)(i), applies to "action[s]"-would be available.[FN1]Furthermore, even if Rule 41(a)(2) applied here, Defendants have not established that they would be prejudiced by dismissal of this proceeding or that dismissal without prejudice should be conditioned upon the grounds they identify.

> FN1. Defendants' argument, taken to its logical extent, would suggest that Medina's notice of voluntary dismissal should be treated as an application for leave to withdraw the underlying motion for civil contempt. Leave to withdraw a motion without prejudice may be granted in the absence of a showing of prejudice to other parties, *see,e.g.,Harris v. Butler,* 961 F.Supp. 61, 62 (S.D.N.Y.1997), and for the reasons set forth below, Defendants have not established prejudice that would

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 5
Not Reported in F.Supp.2d, 2004 WL 2397193 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

warrant setting conditions on the termination of this proceeding.

**\*5** Specifically, Defendants' contention that they might be subject to a second lawsuit and duplicative expenses does not warrant dismissal with prejudice in view of Medina's representation that he has no intention to bring another action based on the facts involved in this matter. Moreover, "[t]he United States Supreme Court recognized long ago that starting a litigation all over again does not constitute legal prejudice."*D'Alto v. Dahon Cal., Inc.,* 100 F.3d 281, 283 (2d Cir.1996) (citing *Jones v. Sec. & Exch. Comm'n,* 298 U.S. 1, 19 (1936) ("The general rule is settled for the federal tribunals that a plaintiff possesses the unqualified right to dismiss his complaint ... unless some plain legal prejudice will result to the defendant other than the mere prospect of a second litigation upon the subject matter.")). To the extent that Defendants have expressed special concern with regard to costs incurred, Rule 41(d), Fed.R.Civ.P., provides Defendants substantial, and seemingly adequate, protection in this regard.[FN2]It does not appear, in light of certain outstanding discovery issues, that this proceeding was on the eve of a hearing when Medina noticed voluntary dismissal, as Defendants claim, or that there is any evidence of undue vexatiousness on Medina's part. Finally, neither Medina's reasons for noticing the voluntary dismissal of this matter following his transfer on March 19, 2004, to a correctional facility which has assertedly met his requested accommodations nor his diligence in noticing dismissal after this transfer occurred provides any basis for dismissing this proceeding with prejudice or upon any of the conditions Defendants advocate.

FN2.Rule 41(d) provides that "[i]f a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the

action until the plaintiff has complied with the order."Fed.R.Civ.P. 41(d).

As Medina has met the standard for voluntary dismissal under Rule 41(a)(1)(i), strictly construed, and Defendants have not established that dismissal with prejudice or upon the enumerated conditions would be appropriate even in the event that Rule 41(a)(2) applied, Medina's notice of voluntary dismissal shall be filed by the Court and this case closed.

It is so ordered.

S.D.N.Y.,2004.
Medina v. New York State Dept. of Correctional Services
Not Reported in F.Supp.2d, 2004 WL 2397193 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                        FOR EDUCATIONAL USE ONLY                        Page 1
Slip Copy, 2007 WL 1577755 (N.D.N.Y.)
(Cite as: Slip Copy)

**⊬**
Medina v. Pataki
N.D.N.Y.,2007.
Only the Westlaw citation is currently
available.Richard D. MEDINA, Plaintiff,
v.
George E. PATAKI, Governor, State of New York,
Defendant.
**No. 9:06-CV-346 (LEK/GHL).**

May 31, 2007.

Richard D. Medina, Watertown, NY, pro se.
Jaime Irene Roth, Office of the Attorney General,
Albany, NY, for Defendant.

LAWRENCE E. KAHN, U.S. District Judge.
*1 Plaintiff Richard D. Medina ("Plaintiff")
commenced this action in March, 2006 and filed a
Complaint pursuant to 42 U.S.C. § 1983 and a
Motion for a temporary restraining order and
preliminary injunction against Defendant George E.
Pataki. *See* Dkt. Nos. 1 & 4. Defendant opposed
Plaintiff's Motion and cross-moved, pursuant to
Federal Rule of Civil Procedure 12(b)(6), to
dismiss this action for failure to state a claim. *See*
Motion to Dismiss (Dkt. No. 13). The Honorable
George H. Lowe, United States Magistrate Judge,
issued a Report-Recommendation on March 26,
2007 pursuant to 28 U.S.C. § 636(b) and L.R.
72.3(c) of the Northern District of New York.
Report-Rec. (Dkt. No. 20).

A copy of Judge Lowe's Report-Recommendation
was sent to Plaintiff, but returned to the Clerk's
Office as undeliverable on April 2, 2007. *See*Dkt.
No. 21.Plaintiff filed a Notice of change of address
with the Court on May 7, 2007; however, on May
11, 2007, Judge Lowe ordered that the Notice be
stricken from the record due to Plaintiff's failure to
indicate that he served his Notice on opposing
counsel. *See* May Order (Dkt. No. 23). Also on
May 11, 2007, the Clerk's Office re-sent the
Report-Recommendation to Plaintiff at the address
he provided on his Notice. *See* May 16, 2007

Docket Entry.

On May 21, 2007, Plaintiff filed a Notice of
voluntary dismissal, without prejudice, pursuant to
Federal Rule of Civil Procedure 41(a)(1)(i).*See*
Notice of Dismissal (Dkt. No. 24). The following
day, Assistant Attorney General Jamie I. Roth
("AAG Roth"), counsel for Defendant, filed an
Affirmation in opposition to Plaintiff's Notice of
voluntary dismissal. AAG Roth Aff. (Dkt. No. 25).

Rule 41(a)(1)(i) permits a plaintiff to dismiss an
action without a court order by filing a notice of
dismissal "at any time before service by the adverse
party of an answer or of a motion for summary
judgment."FED. R. CIV. P. 41(a)(1)(i). AAG Roth
acknowledges that she has not filed an answer or
summary judgment motion, however, she claims
that Defendant's Opposition and Cross-Motion
squarely addressed the merits of the action. AAG
Roth Aff. (Dkt. No. 25) at ¶ 11.In support of this
position, AAG Roth cited *Harvey Aluminum, Inc. v.
American Cyanamid Co.,* 203 F.2d 105 (2d
Cir.1953). Moreover, Defendant argues that
voluntary dismissal would unduly prejudice him
because his Cross-Motion was filed nearly one year
ago and Judge Lowe has already recommended
dismissal with prejudice of several claims and
dismissal of the action in its entirety for failure to
comply with the Court's Orders and Local Rules. *Id.*

In *Harvey,* the Second Circuit reversed the district
court's denial of a motion to vacate the notice of
dismissal. *Harvey,* 203 F.2d 105. The Circuit
reasoned that the merits of the controversy had
been "squarely raised" after the district court had
held an evidentiary hearing lasting several days and
generating a record of over 400 pages and that a
literal application of Rule 41(a)(1)"would not be in
accord with its essential purpose of preventing
arbitrary dismissals after an advanced stage of a
suit has been reached."*Id.* at 107-08.However, the
Circuit has since noted that Harvey "has not been
well received" and that "subsequent cases have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                    FOR EDUCATIONAL USE ONLY                    Page 2
Slip Copy, 2007 WL 1577755 (N.D.N.Y.)
**(Cite as: Slip Copy)**

almost uniformly either distinguished *Harvey Aluminum,* limiting the case to its particular factual setting, or forthrightly rejected it as poorly reasoned."*Thorp v. Scarne,* 599 F.2d 1169, 1175 (2d Cir.1979) (collecting cases).

**\*2** In *Thorp,* the district court held a hearing on the plaintiff's application for a temporary restraining order, which was denied, and another hearing on the plaintiff's motion for a preliminary injunction, which was also denied; the plaintiff then filed a notice of dismissal, and the defendants moved to have that notice vacated. *Id.* at 1171.The district court in *Thorp* vacated the dismissal, and noted that defendants' brief opposing the application for a temporary restraining order would be treated as the equivalent of a motion for summary judgment, which would terminate the plaintiff's right to voluntarily dismiss the action. *Id.* at 1173.The Circuit held that Rule 41(a)(1) uses precise language that is intended to serve as a bright-line test marking the termination of a plaintiff's otherwise unfettered right voluntarily and unilaterally to dismiss an action and that the two hearings in *Thorp* did not justify abandoning a literal interpretation of the rule. *Id.* at 1176.

AAG Roth concedes that Defendant has not filed an answer or a summary judgment motion that would automatically prevent Plaintiff from filing a notice of voluntary dismissal. While Defendants have expended considerable effort on this action, that effort does not rise to the level previously found to justify vacating a notice of dismissal, such as in *Thorp.*Moreover, the courts have held that the mere expenditure of time and money by a defendant cannot prevent a Rule 41(a)(1)(i) dismissal when the conditions set forth in the Rule have been met. *See Medina v. New York State Dep't of Corr. Servs.,* No. 03 Civ. 9249(RWS), 2004 U.S. Dist. LEXIS 21485, at *8 (S.D.N.Y. Oct. 29, 2004). Additionally, the courts have rarely considered other filings, such as Defendant's Motion to dismiss, to serve as the equivalent of answers or summary judgment motions that would prevent plaintiffs from voluntarily dismissing their cases; to do so would be to require the courts to intervene

frequently, which would no longer make Rule 41(a)(1)(i) dismissals self-executing, as they were intended to be. *See id.* at * 11.Plaintiff has met the literal standard for voluntary dismissal under Rule 41(a)(1)(i), and Plaintiff's Notice of voluntary dismissal shall be filed by the Court and this case closed.

Accordingly, it is hereby

**ORDERED,** that Plaintiff's Notice of voluntary dismissal (Dkt. No. 24) is **FILED;** and it is further

**ORDERED,** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED WITHOUT PREJUDICE;** and it is further

**ORDERED,** that the Report-Recommendation (Dkt. No. 20) is **REJECTED AS MOOT;** and it is further

**ORDERED,** that Plaintiff's Motion for a temporary restraining order and preliminary injunction (Dkt. No. 4) is **DENIED AS MOOT;** and it is further

**ORDERED,** that Defendant's Cross-Motion to dismiss (Dkt. No. 13) is **DENIED AS MOOT;** and it is further

**ORDERED,** that Case No. 9:06-CV-346 (LEK/GHL) is **CLOSED;** and it is further

**\*3 ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

N.D.N.Y.,2007.
Medina v. Pataki
Slip Copy, 2007 WL 1577755 (N.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 2809205 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**

Seippel v. Jenkens & Gilchrist, P.C.
S.D.N.Y.,2004.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
William H. SEIPPEL and Sharon A. Seippel,
Plaintiffs,
v.
JENKENS & GILCHRIST, P.C.; Paul M.
Daugerdas; Sidley, Austin, Brown & Wood LLP;
R.J. Ruble; Deutsche Bank A.G.; and Deutsche
Bank Securities, Inc., d/b/a Deutsche Bank Alex
Brown, Defendants.
**No. 03 Civ. 6942(SAS).**

Dec. 7, 2004.

Blair C. Fensterstock, Maureen McGuirl, Josiah
Greenberg, Fensterstock & Partners, L.L.P., New
York, New York, for Plaintiffs.
Ann E. Schofield, McDermott, Will & Emery, New
York, New York, for Defendants Jenkens &
Gilchrist and Paul Daugerdas.

SCHEINDLIN, J.
*1 The Seippels have noticed the voluntary
dismissal of their claims against Jenkens &
Gilchrist, P.C. and Paul Daugerdas (collectively,
"Jenkens") pursuant to Rule 41(a)(1) of the Federal
Rules of Civil Procedure. Jenkens opposes the
dismissal. For the following reasons, voluntary
dismissal is proper and the Seippels' claims against
Jenkens are dismissed without prejudice.

I. BACKGROUND

The Seippels sued defendants for allegedly
fraudulent practices in connection with the
provision of tax consulting services. Defendants
moved, in three separate groups, to dismiss,
pursuant to Rule 12(b)(6). Jenkens neither filed an
answer, nor moved for summary judgment pursuant
to Rule 56. Before ruling on defendants' various
motions to dismiss, I stayed all proceedings against
Jenkens, pursuant to a class action settlement
agreement.[FN1] In an Order dated August 25, 2004

("the August 25 Order") I granted, in part, the
motions to dismiss of all defendants other than
Jenkens.[FN2] Because of the stay, I did not rule on
Jenkens' motion, although Jenkens' motion raised
similar issues to those raised in the other
defendants' motions. The Seippels now seek
voluntary dismissal, without prejudice, of their
claims against Jenkens. Jenkens requests that the
Court defer the Seippels' dismissal, in order to rule
on Jenkens' motion to dismiss.

> FN1. *See Denney v. Jenkens & Gilchrist,*
> No. 03 Civ. 5460, (S.D.N . Y. May 19, 2004).

> FN2. *See Seippel v. Jenkens & Gilchrist,*
> No. 03 Civ. 6942, 2004 WL 1907315
> (S.D.N.Y. Aug. 25, 2004). Familiarity with
> that Order is presumed.

II. APPLICABLE LAW

Rule 41(a)(1) provides, in pertinent part, that "[a]n
action [FN3] may be dismissed by the plaintiff
without order of court (i) by filing a notice of
dismissal at any time before service by the adverse
party of an answer or of a motion for summary
judgment, whichever first occurs."[FN4] "Rule
41(a)(1) means just what it says-if no answer or
motion for summary judgment has been served, the
plaintiff has the unilateral right to discontinue his
action. There is no discretion of the court
involved."[FN5] Indeed, dismissal occurs without
"even a perfunctory order of court closing the file.
Its alpha and omega was the doing of the plaintiff
alone."[FN6]

> FN3. Although Rule 41 speaks in terms of
> 'actions,' the plaintiff may dismiss less
> than the entire action pursuant to Rule 41-
> that is, the plaintiff may dismiss its claims
> as to some but not all defendants. *See*
> *Mutual Benefit Life Ins. Co. in*
> *Rehabilitation v. Carol Management*
> *Corp.,* No. 93 Civ. 7991, 1994 WL 570154
> (S.D.N.Y. Oct. 13, 1994); *Baksh v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                          Page 2
Not Reported in F.Supp.2d, 2004 WL 2809205 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*Captain,* No. 99 Civ. 1806, 2000 WL 33177209 (E.D.N.Y. Dec. 11, 2000).

FN4.Fed.R.Civ.P. 41(a)(1). If the conditions of Rule 41(a)(1) are not met, the plaintiff must seek dismissal by stipulation, or under Rule 41(a)(2), which provides that "[a]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."*See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 394 (1990).

FN5.*Barr Bros. & Co. v. Senft,* No. 82 Civ. 5007, 1982 WL 1342, at *3 (S.D.N.Y. Oct. 27, 1982).

FN6.*Thorp v. Scarne,* 599 F.2d 1169, 1175 (2d Cir.1979) (quotation omitted).

The filing of a motion to dismiss pursuant to Rule 12(b)(6) does not ordinarily affect the plaintiff's right to a Rule 41(a)(1) dismissal. However, where a motion to dismiss "could have been treated as a request for summary judgment," because matters outside the pleadings have been presented to the court and not excluded, "the right to voluntary dismissal is extinguished."[FN7]Such exceptions to Rule 41(a)(1) are to be strictly construed.[FN8]However, "courts have repeatedly rejected arguments that events or filings other than answers or motions for summary judgment may be deemed the equivalent of those items for purposes of Rule 41(a)(1)."[FN9] The Second Circuit has stressed that Rule 41(a)(1) is intended to "establish[ ] a bright-line test marking the termination of a plaintiff's otherwise unfettered right voluntarily and unilaterally to dismiss an action."[FN10]

FN7.*Yosef v. Passmaquoddy Tribe,* 876 F.2d 283, 284, 286 (2d Cir.1989).

FN8.*See Santiago v. Victim Servs. Agency,* 753 F.2d 219, 222 (2d Cir.1985) (emphasizing that "only the occurrence of one of the two events specified in the rule can cut off the plaintiff's right unilaterally

to dismiss the action.").*See also Medina v. New York State Dep't of Corr. Servs.,* No. 03 Civ. 9249, 2004 WL 2397193 (S.D.N.Y. Oct. 6, 2004).

FN9.*Medina,* 2004 WL 2397193, at *3 (collecting cases).

FN10.*Thorp,* 599 F.2d at 1175.

### III. DISCUSSION

Citing *Yosef,* Jenkens contends that the Seippels have lost their right to voluntary dismissal under Rule 41(a)(1) because Jenkens' motion to dismiss could have been treated as a motion for summary judgment. Jenkens argues that its motion to dismiss presented matters outside the pleadings to the Court. Specifically, Jenkens notes that it attached to its motion, as an exhibit, the Opinion Letter issued to the Seippels by Jenkens.[FN11]

FN11. Another defendant, Sidley Austin Brown & Wood ("Sidley"), attached Sidley's Opinion Letter to the Seippels to its motion to dismiss.

*2 Jenkens' argument is unavailing. In order to consider Jenkens' Opinion Letter, it would not have been necessary to convert the motion to dismiss into a motion for summary judgment. Where a plaintiff relies on a document which is integral to the complaint, it is well-established that a court may consider that document without converting the motion into one for summary judgment.[FN12] Jenkens' Opinion Letter was integral to the Seippels' complaint-as Jenkens itself argued when urging the Court to consider it in ruling on Jenkens' motion.[FN13]In ruling on Sidley's motion to dismiss, I relied on Sidley's Opinion Letter, and expressly noted that I was able to do so because it was integral to the complaint.[FN14]In *Yosef,* by contrast, the party moving to dismiss submitted affidavits and exhibits supporting its contention that it had not been properly served and that the statute of limitations had run-materials that were not integral to the complaint, and could not have been considered without converting the motion to one for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d            FOR EDUCATIONAL USE ONLY                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 2809205 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

summary judgment.[FN15]

> FN12.*See International Audiotex Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995).

> FN13.*See*Jenkens' Memorandum of Law in Support of Motion to Dismiss, at 3, n. 3.

> FN14.*See Seippel,* 2004 WL 1907315, at *10 n. 116.

> FN15.*See Yosef,* 876 F.2d at 286.

Jenkens also contends that the Seippels are seeking dismissal solely to evade the implications of my August 25 Order, in which I ruled that their malpractice claims against Sidley were time-barred. Jenkens argues that it would be a waste of resources to allow the Seippels to dismiss their claims without prejudice at this stage. I am not unsympathetic to Jenkens' arguments, but they are misplaced. The law of this Circuit is clear. "Mere expenditure of time and money by a defendant ... does not bar a plaintiff from timely dismissing an action under Rule 41(a)(1)(i)."[FN16] A plaintiff's motives in seeking dismissal are irrelevant.[FN17]

> FN16.*Johnson Chem. Co. v. Home Care Prods.,* 823 F.2d 28, 31 (2d Cir.1987), *overruled on other grounds, Chemiakin v. Yefimov,* 932 F.2d 124, 129 (2d Cir.1991).

> FN17.*See Thorp,* 599 F.2d at 1177 ("As long as the plaintiff has brought himself within the requirements of Rule 41, his reasons for wanting to do so are not for us to judge.").

The Second Circuit has explained that, although a bright-line rule may appear to lead to inefficiencies in particular cases, such a rule is necessary because: Rule 41(a)(1)(i) dismissals will no longer be self-executing, as intended, if there is to be frequent judicial intervention for the purpose of determining whether the equivalent of an answer or a motion for summary judgment has been served or for the purpose of weighing whether the merits have been

sufficiently considered by the court to warrant terminating the plaintiff's right to dismiss the proceedings.[FN18]

> FN18.*Id.* at 1176.Of course, the Seippels could not now use Rule 41 to evade the impact of my August 25 Order, insofar as that Order dismissed their claims against the remaining defendants. Those claims having been dismissed by my Order already, there would be nothing for the Seippels to voluntarily dismiss; Rule 41 thus cannot be used to vacate the effect of a court's dismissal with prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Seippels' notice of voluntary dismissal is valid under Rule 41(a)(1). The Seippels' notice of voluntary dismissal shall be filed by the Court, and their claims against Jenkens are dismissed without prejudice. The Clerk of the Court is directed to terminate this action with respect to Jenkens & Gilchrist, P.C. and Paul M. Daugerdas.

S.D.N.Y.,2004.
Seippel v. Jenkens & Gilchrist, P.C.
Not Reported in F.Supp.2d, 2004 WL 2809205 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.